Ruffin, Chief Justice,
 

 after stating the pleadings as above, proceeded as follows: — The decree on the bill of review does not state the grounds. of it. Whether they were those stated specially in the demurrer, or that the original decree was not erroneous in any of the respects stated in the bill.
 

 The Court is of opinion, that neither of the special reasons bars the plaintiff's bill. It is a matter of practice in England to require the signatures of two counsel of character to a petition for rehearing or for appeal to the House of Lords, in order to avoid delays and prevent frivolous appeals. But we do not find sueh a rule laid down with respect to the bills of review, and it would seem tobe altogether inapplicable. Such bills, upon newly discovered evidence, can only be filed by leave of the Court; and the Chancellor grants that leave upon his own judgment, and not on the certificate of counsel. When they are brought for errors in law, apparent upon the decree, they are regularly entertained as a matter of course, as much so as a writ of error is at law. That is strictly a writ of right. And a bill of review is of that nature according to the course of the Court of Equity ; the only restriction imposed is, to require previous obedience to the decree, and a deposit to answer the costs, or here, as at law, to give security for the costs. It is sufficient, therefore, that, the bills be signed by one counsel.
 

 The power to have a cause reexamined upon appeal, does not preclude a reexamination of it before the same Court in which it was first tried. We think the allowance of the appeal, and the failure to prosecute it, does not make it a decree by consent; nor ought to be attended by the consequences of such a decree in this respect. It is a principle with the Chancellor, as well for his own protection from error, as for the purposes of justice, and the satisfaction of suitors, never to conclude any question by a single hearing. Until a second, hearing be had in some one of the regular modes, any one of them which in the state of the case has not been specifically lost, or abandoned, is open to the party. After appealing and
 
 *355
 
 not acting on it, the same party cannot appeal a second time to a higher tribunal. But the first decree does not thereby stand as if it had been affirmed: especially in this state, when the appellee could have brought up the transcript, and asked upon it that the former decree should be affirmed. The opposite party cannot be injured by having the cause reconsidered upon a bill of review: for he can still appeal from the decree on it. Unless it would produce some prejudice to him,' the Court cannot but cheerfully entertain the right to revise its own acts at least once. Indeed it is more respectful that the Judge who pronounced’the decree, should have an opportunity of correcting his own errors in the first instance. The question ■ between1 the parties, therefore, depends upon the propriety of the decree in the original cause.
 

 It has been contended for the plaintiff, first, that the contract ought to have been rescinded, because the defendants could not make him a good title'; and secondly, that if the contract ought to be specifically executed, without regard to the actual state of the title, the defendants ought to have been decreed to make conveyances with covenants of general warranty, and for quiet possession: and, therefore, that he ought,not to have been compelled to accept the deed of .Mrs. Buie, which has no such covenants, but only against her own acts, and those claiming under her, nor to accept that of Gilchrist and wife, because it has not been executed so as to pass even her estate, whatever it may be; and, thirdly, that the decree was erroneous, in .ordering the agreement to be deliveréd up. . ' . -
 

 The merits of the cause depend upon the two first positions; and they again upon the proper circumstances of the contract. It is clear that the plaintiff cannot, upon the words of the agreement, or the understanding of the parties, claim in respect of the Goodson tract, and those called “ Colin M'Pherson’s Estate,” more than a conveyance for such titleas the vendors had : that is a deed with special warranty. There is no allegation of fraud; but the relief is put on the ground of the stipulations of the parties. The bill does riot plainly charge ignorance and
 
 *356
 
 a mistake on the part of the plaintiff as to the state of the title; and we suppose it was partly in reference to that charge that his knowledge of the title was declared in the decree: it seems to us to be altogether immaterial in every point of view, so far as- regards those parcels; because he took them at his own risk expressly ; and even if mistake would help him, he does not state it so that the Court can see in what it consisted, nor how it misled him. But the fact was found against him, and the declaration of it in the decree unnecessarily, will not hurt.
 

 TT Upon a bill for a perfofC manee, in hie^vendor is bound to
 
 good
 
 title, but is not . compelled to covenant patentlyaP" good own acts1IS and those, under ^hfm. But in this ii'seems, that the vendee has a right to of general
 
 warranty,
 

 The Court probably conceived, also, that the plaintiff’s knowledge of the title, and his taking possession under it in right of his wife, and her sisters, and the taking exclusive possession under the purchase of the sisters’ shares, were material to the relief which the plaintiff could have in that state of the case, in respect of the
 
 “
 
 old plantation,” although he might under the contract itself, if matters had remained as they then were, have been entitled to demand a perfect title to that tract. Then certainly, on circumstances under which a vendee will be held to have waived all objections to the title, and to have so acted as to have . . it in his power to ask for nothing more than the conveyances of his vendor, — what, in such a case, are proper covenants to be inserted in the conveyance, would still have to be
 
 determined. In
 
 England, although a vendor must show a good title before the vendee shall be eom-pelled to accept it, yet it seems settled that the vendor is not obliged to covenant for the title thus apparently good, ,. . , . . , , • t> beyond his own acts and those claiming under him. But we believe that is not so considered in this country : at least it is not so settled; and in practice the vendee sel-d°m submits the title to counsel, or examines it himself, and therefore requires general covenants, which it is the constant course to give. If his Honor therefore, thought the plaintiff was ever entitled to a reference of the title in this ease, he must deem the rule of England to be that of this state, and that the purchaser cannot ask for r , general covenants; for the deed of Mrs. Buie has none suc^ to aPPended to it, as being proper in the case declared in the decree. That position has never yet been
 
 *357
 
 laid down by us or our predecessors; and would require very deliberate consideration, before the adoption or positive repudiation of it. The task of that examination is not imposed on us in this case; for the question does not arise, if the contract between these parties was written for a title, nor for covenants for a title. Such we think is its character ; and therefore all the inquiry into the knowledge or conduct of the plaintiff was superfluous.
 

 The doubt can extend only to the first tract mentioned, —the old plantation, — to which the vendors are to “ make a sufficient title as far as their claim extends on said lands.” It is argued for the pláintiff that those terms in themselves embrace a good title, or at the least covenants for it; and must have that meaning when contrasted with the phrase “ quit claim deed,” which immediately follows, and is applied particularly to the other tracts. “ Sufficient title,” in its proper and obvious sense refers to the interest or estate in the land, and requires it fi> be indefeasible, and it may be also stipulated for the usual covenants for the title and enjoyment. But those words may be used in a different sense; and the question is, whether there is enough here to show that they were- We think there is. They are not contrasted in the agreement with the other words, for the purpose of obliging the vendors to show a good title to one parcel, and dispensing with it as to the others; nor to make a deed with general covenants as to the former, which might be omitted as to the latter :■ The term
 
 title
 
 is evidently used for
 
 deed.
 
 That is the vulgar sense in whieh it is often used; and that was the meaning of these parties.
 
 Deed
 
 dr
 
 conveyance
 
 must be substituted or interpolated to make it mean any thing; for,. tha,t the vendors should be able to make out a sufficient title, would not serve the plaintiff any purpose, unless they were required to convey it to him.
 
 To make
 
 a title, therefore, did not mean to make out one; but to make a deed, and a sufficient one, at least in point of form, and to pass the title. We will not say that if the agreement had stopped there the vendors might be deemed to have performed the agreement by a conveyance, good in point of form only, and might not have been bound to make one
 
 *358
 
 which was in fact operative, and would carry a good title. But it does not stop with those words. To what are they í0 make a sufficient deed
 
 Í
 
 Not to any particular undivided share or determinate quantity of land ; but to a certain tract of land,
 
 as far as their claim extends on said lands.
 
 Now, whatever the former expression may mean, if standing alone, these last words qualify it, and confine it to their claim, such as it is. A purchaser under a notice of a sale of an estate, “ as A. B. held it,” cannot insist upon any title but such as A. B. had;
 
 Freire
 
 v.
 
 Wright,
 
 4 Mad. Rep. 193; even when the sale professed to be of the whole in severalty. To what could a general warranty be answered in this case ? The agreement does not specify what their claim was: what shares or proportions they had, or pretended to have. If the deed, therefore, followed the agreement, and conveyed their “ shares” or claim, the warranty would be futile; for, as far as their shares extended, the title would be good, and the covenant unnecessary, and beyond that the deed would not purport to convey, and there would be nothing for the covenant to operate on. It is said, however, that the vendors claimed each an undivided fourth part, and that establishes what was meant by their claim. But there is nothing in the agreement to that eflfeet; nor, if we can go out of it, is there any thing to show that such was the meaning of the parties. The defendants deny that charge in the bill, and say that they were only to convey the title they had. Suppose it had turned out, that the defendants owned the whole tract, could the Court say they had not contracted to sell the whole, when the agreement is for their claim in the tract without specifying what part ? It may be further argued, that the insertion of a general warranty in the deed of Gilchrist and wife proves the intention. It would certainly be some evidence of it, if they had not explained their reason and denied that inference, and their explanation is supported by the circumstance that the covenant embraces all the different tracts, while they certainly were not bound to warrant all. But what puts the meaning beyond doubt is, that the very same words, “ sufficient title,” are used in the close of the instrument in the
 
 *359
 
 sense of “ deed” only. It provides that when “sufficient titles shall be made to said lands,” the bond shall be void. What bonds
 
 1
 
 All that were sold, to parts of which the instrument is express that the sufficient titles shall consist of a “ quitfclaim deed.” We conceive upon the w’hole, that the sense of the parties was, that the defendants sold their interest, whatever it might be, and agreed to convey it by the description of their claim or shares therein. His Honor was, therefore, right in refusing to inquire into their title, either as to its validity or the quantity to which it extended. But we do not concur in that part óf the decree which declares the deeds tendered by the defendants to be proper and sufficient, according to the tenor and effect of the agreement. ■ That of Mrs, Buie we think was, for the reasons already given. If each vendor was bound for the performance of the others, upon the' agreement, she was not; because she was a married woman when it was made, and subsequently undertook!© carry only her own interest, as her hiisband had contracted she should; and her deed is effectual to that' purpose. But that of Gilchrist and wife is not effectual, according to several decisions of this Court,for the want of probate or acknowledgment as to the husband; before which, the wife cannot be privily examined.
 
 Burges
 
 v.
 
 Wilson, 2
 
 Dev. 306. The decree ought, therefore, to have relieved the plaintiff, either by rescinding thé agreement as to that share, unless the husband, in a reasonable time, executed and procured his wife to execute a conveyance duly acknowledged; and we suppose that would have been the decree had- the objection been made or the acknowledgment read at the hearing. It is highly probable that it was not; for it is not even stated as one of the grounds of the bill of review, but is made in argument in this Court for the first time. For that reason we cannot correct the decree, although we think it erroneous in- this respect..
 

 The deed °^ wife”d where the SinatiorTof fore the ac-both, is case of^
 
 Burgess
 
 v. Devtlíépf 3063
 

 Upbir
 
 ¿
 
 bill °f review for errors in law, only th,ose can be reexamined
 
 *360
 
 which are anywhere’ the error' wasthat general were not directed to be inserted in a deed, the plaintiff cannot, at the hearing, the^eecT* was im-executed,
 

 
 *359
 
 The rule is well established, that a bill of review must recite the former bill, and the proceedings which were had . 1 . on it, so as to hear what matters were in issue; and the former decree, so as to hear how those matters were dis- . 7 ... . posed of; and then the points in which that decree is con
 
 *360
 
 ceived to be erroneous, so as to show what the party complains of, and how he is injured thereby. It is not enough that there is error, but it must be to the prejudice of the plaintiff; and therefore the other side may look into eveiT part °f the decree, and insist, that upon the whole of it, right has been done. Nor will any error, by itself, do, unless complained of in the bill; because the plaintiff may have had. an interest, at the time, in submitting to that part of the decree which is erroneous, and ought not to retract -when he finds his interest the other way; or the ... ...... * ' . defendants might have withheld this demurrer, and con-sen{e(j {0 the correction of the decree, if the bill had stated ... this objection. It is plain that this plaintiff had an interest wben the decree was pronounced, supposing it to be correct, in either respect, to state the deed as it is; for as the deed of the husband alone, with.covenants binding on him, it is better than the deed of both, without covenants, and will coerce the husband to have a deed by himself and his wife properly executed, in order to pass his title, and prevent that, at least, from being used so as to be a breach of his present covenants. However that may be, a bill of review does certainly bring up the whole decree; but the court-books, at the instance of the plaintiff, only as to those parts of the decree which he particularly complains of, and states in the bill as the grounds of it. Cooper’s Eq. PI. 95. We would not construe the terms in which the errors are alleged, with rigor, so as to exclude from re-examination, any thing that counsel could be supposed to have expected to insist on. But after the most liberal exposition of this bill, we cannot think that this point entered into the imagination of the draftsman. The whole scope of the bill is to have the construction of the contract corrected, and to have it declared that the plaintiff ought to have a good title, or covenant for such a title ; and the only objection to the deed is, that they did not convey such a title, nor contain such covenants. Not a word is said about the insufficiency of the deeds, for want of such execution. Now the Court is of opinion, that the plaintiff was not entitled to those covenants ; and the fact is, that they are in the deed from Gilchrist and wife. But the deed not
 
 *361
 
 being good as to her, and that being apparent, as it is said, justice ought to be done to the plaintiff. That is the difficulty ; it is not apparent, and cannot be made to appear in this suit, since the bill has no obligation which will enable the Court to look for the fact in the decree.
 

 Upon a decree for a specific performance, it is proper to order the articles to be cancel-led. But it is otherwise ifthebillbe dismissed.
 

 It has been urged, indeed, that it is covered by the assignment of error in that part of the decree which orders the agreement to be delivered up; which was done upon the idea that it had been performed before the original bill was filed. It struck us, at first, that there was an informality in directing, that, upon the plaintiff’s bill, instead of putting the vendors to their bill, after performance. But it is clearly otherwise. If the plaintiff’s bill had been dismissed, it would have been informal to cancel the agreement in the suit. But the bill was not dismissed, and the plaintiff got all he was entitled to, though not all he claimed. He got specific performance, according to the tenor and meaning of the articles ; for a tender of a deed is not performance of an agreement to convey in this Court, as at law. It only affects costs here, and the ven-dee may still file his bill to get the deed. Here that was done, and obtained, by the decree. Of course, when the agreement was fully performed under the direction of the Court, it was proper the Court should see that the party performing should be safe from further vexation on it. If the plaintiff were to proceed on it at law, the Court would be bound to restrain him by injunction; and therefore might at once detain the instrument, or order it to be delivered over. This part of the decree was therefore right in itself, supposing the construction of the instrument to be right, and we do not perceive how the allegation of error in it can reach the defect in Mrs. Gilchrist’s deed. The cancellation followed as a consequence of performance by the execution of that deed, and, consequently, the error in the order was the result of the defect in the deed. But that defect itself is not complained of in the bill, and therefore the Court can no more declare that there was error in cancelling the agreement, than we can declare it erroneous to have held the deed to be duly executed.
 

 Upon the whole, therefore, the Court does not perceive
 
 *362
 
 any error in the decree, as complained of in the bill. Though not formally expressed, it is substantially right; anc* decree of the Court of Equity, whereby the plaintiff’s bill of review was ordered to stand dismissed, with costs, and the decree in the said bill of review complained of, was ordered to be affirmed, is by this Court affirmed, with costs.
 

 PerCüRiam. Decree affirmed.